■ M.D., Respondent, v PASADENA REALTY Co. et al., Appellants. [753 NYS2d 457] —Order, Supreme Court, New York County (Louis York, J.), entered July 25, 2000, which denied defendants' motion for summary judgment dismissing the complaint as untimely, reversed, on the law, without costs, the motion granted and the complaint dismissed. The Clerk is directed to enter judgment in favor of defendants, dismissing the complaint.

On March 19, 1995, plaintiff was assaulted and raped by an intruder in the apartment building owned and operated by defendants. The complaint, which also names Gerald Musano, individually and as general partner of Pasadena Realty Co. (collectively, the landlord), alleges that the assault was facilitated by poor security on the premises.

Plaintiff's bill of particulars suggests that the "door buzzer/ intercom system" had been malfunctioning. At her deposition, plaintiff testified that, prior to the assault, the electric door latch remained engaged and could be heard buzzing, leaving

the door lock in the open position for extended periods. While this problem was intermittent, plaintiff stated that both she and her roommate had complained about it to building management on a total of five or six occasions. Plaintiff also testified that, at some time during February 1995, she encountered a homeless man in the basement of the apartment building. She further asserted that she had complained about discarded liquor bottles and cigarette butts in the vicinity of the basement elevator.

As to the assault, plaintiff testified that when she returned home from work in the early morning hours of March 19, 1995, she heard no buzzing of the electric latch and, in fact, unlocked the door to the lobby with her key. As she walked down the hallway to her apartment, an unknown assailant approached from behind, put a gun to her head and dragged her into the stairway next to the elevator shaft, where the rape took place.

At his pretrial deposition, the building owner testified that there had been no criminal activity in the building since the premises were acquired in 1980. He was not aware of any report of a vagrant loitering in the basement, nor was he aware of any problem with the door lock or intercom system. Likewise, the building's managing agent testified that he had received no complaints from anyone concerning the entry system, nor did he recall any report of an intruder in the basement. As to the liquor bottles, he explained that tenants sometimes left glass bottles next to the elevator, instead of taking them to the designated recycling area. He further stated that he had heard of no crime being committed on the block where the building is situated at any time prior to this incident.

Defendant moved for summary judgment dismissing the complaint on the ground that plaintiff failed to make out a cause of action. Defendant noted that plaintiff's own testimony establishes that the buzzer was functioning properly at the time of the assault and demonstrates her inability to specify how the intruder might have gained access to the building's interior. In opposition, plaintiff argued that from the intermittent defect in the electric entry system, the presence of the homeless man on one occasion and the collection of bottles and cigarette butts in the basement, it was more than likely that her assailant gained access by reason of a negligently maintained entrance. She asserted that these facts raise the question of whether the landlord was on notice of unauthorized entry by vagrants or others, who might represent an unreasonable risk to the safety of the tenants.

It is settled that "a landlord has a duty to maintain minimal

security measures, related to a specific building itself, in the face of foreseeable criminal intrusion upon tenants" (*Miller v State of New York*, 62 NY2d 506, 513 [rape of student]). As conversely stated by this Court: "A landlord is not held to a duty to take protective measures unless there is a foreseeable risk of harm resulting from criminal activities of third persons on the premises (*Nallan v Helmsley-Spear, Inc.*, 50 NY2d 507). Where, as here, there is little evidence of criminal activity in the building, there are insufficient facts to base a finding of foreseeability (*see, Iannelli v Powers*, 114 AD2d 157, *lv denied* 68 NY2d 604)." (*Camacho v Edelman*, 176 AD2d 453, 454.)

In view of plaintiff's admission that the electric door lock was functioning on the day of the assault, the landlord's compliance with its duty to take minimal precautions to protect tenants living in the building against the criminal acts of third parties has been established (*Jacqueline S. v City of New York*, 81 NY2d 288, 293-294; *Todorovich v Columbia Univ.*, 245 AD2d 45, 45-46, *lv denied* 92 NY2d 805). Given the further admission that plaintiff was required to use her key to gain access to the premises, plaintiff has likewise failed to demonstrate the likelihood that her assailant "was an intruder who gained access to the premises through a negligently maintained entrance" (*Burgos v Aqueduct Realty Corp.*, 92 NY2d 544, 551; *Anzalone v Pan-Am Equities*, 271 AD2d 307, 309 [locked door with functioning intercom system sufficient to discharge landlord's duty of security]). Moreover, the record is devoid of evidence of any prior criminal activity, either on or around the premises, that posed a threat to the safety of the tenants. Finally, even construing, as we must, the facts concerning the isolated incident involving the presence of a vagrant in a light most favorable to plaintiff (*Ingle v Glamore Motor Sales*, 73 NY2d 183, 194; *Crosland v New York City Tr. Auth.*, 68 NY2d 165, 168 n 2), there is no suggestion that the alleged intruder presented any danger to the physical safety of the building's occupants. Therefore, the assault upon plaintiff was an unforeseeable criminal act that severed any possible causal connection with the purported negligence (*Derdiarian v Felix Contr. Corp.*, 51 NY2d 308, 315, *rearg denied* 52 NY2d 784, 829; *Anzalone v Pan-Am Equities, supra* at 308).

As to the timeliness of defendants' motion, it should be noted initially that plaintiff did not raise the issue in her opposition papers (*see Fainberg v Dalton Kent Sec. Group*, 268 AD2d 247, 248). Moreover, judicial economy is not promoted by requiring the parties to try a case that is appropriate for summary disposition on the ground that it fails to state a cause of action. Pre-

sumably, this is why the rules permit a motion to dismiss the complaint on this basis to be brought at any time (CPLR 3211 [a] [7]; [e]; *see Holz v Rinacente Props.*, 197 AD2d 669; *see also Guggenheimer v Ginzburg*, 43 NY2d 268, 274-275; *but see Milne v Cheema*, 270 AD2d 165 [CPLR 3211 (a) (2) motion]). In any event, defendants did not employ the motion for dilatory effect or to limit plaintiff's ability to interpose a response (*see Gonzalez v 98 Mag Leasing Corp.*, 95 NY2d 124, 128). As in *Gonzalez* (*supra*), the evidence forming the basis for defendant's motion was acquired during depositions conducted after plaintiff filed a note of issue. Concur—Sullivan, Rosenberger, Wallach and Rubin, JJ.

Tom, J.P., dissents in a memorandum as follows: Insofar as I conclude that the motion court acted properly and complied with the statute, I respectfully dissent.

CPLR 3212 (a) states that a motion for summary judgment must be made by the date specified by the court, as long as that date is not less than 30 days after the note of issue is filed, or, if no date is set, then within 120 days of the filing of the note of issue. As the statute is written, the court has the prerogative, in the first instance, of setting a deadline, and the 120-day statutory deadline is triggered only if the court does not set a deadline for summary judgment motions. If the motion is untimely, though, the motion shall be denied unless the motion court grants leave on the basis of good cause shown. The obvious point is that the court's exercise of discretion in determining its own scheduling does not yield to a statutory period of 120 days but, rather, the statutory period becomes relevant only if the court has not established a clear schedule.

This case arose from a 1995 incident. The note of issue was filed on January 11, 2000. Defendants sought summary judgment by notice of motion dated May 9, 2000, just within the 120-day period addressed in CPLR 3212 (a). However, a preliminary conference order required that all motions for summary judgment be made within 45 days of the filing of the note of issue, and a compliance conference order required that all summary judgment motions be made within 30 days of the filing of the note of issue. Defendants, as appellants, fail to include these orders with the appellate record, but the dates are not disputed. Hence, the time periods that operate in this case are the 30-day period or, arguably, the 45-day period, but the 120-day period is not relevant. As to both orders, the motion was late by more than 2½ months. Defendants provided no reason for the delay, and submit no argument establishing good cause on appeal.

The relevant CPLR provisions were established by a 1996 amendment to section 3212 (a). The amendment was intended to combat the pernicious practice whereby, under former law, summary judgment motions could be made almost at any time, with consequential havoc wreaked on many a court calendar. When summary judgment motions were made on the eve of trial, adversaries were often deprived of opportunities to meaningfully respond. Moreover, the timing of dilatory summary judgment motions was often used tactically, burdening the court as well as parties that were actually ready for trial. As such, and in recognition of the imperative that cases should proceed to trial in an orderly manner, section 3212 (a) was amended to impose definite time limitations on motions that could dispose of a case (*Gonzalez v 98 Mag Leasing Corp.*, 95 NY2d 124). However, the Legislature also intended to afford courts leeway to reach the merits of a motion when late filing of the motion, rather than being merely dilatory, is explainable and excusable. Hence, the court may exercise discretion to decide a motion on the merits when good cause for the delay is shown—again an implicit legislative recognition of the imperative of allowing a court to manage its own calendar. This, though, is not such a case, so that the statutory mandates control.

We, too, have clearly acknowledged that a court has inherent power over the control of its calendar and the disposition of business before it, and in that regard enjoys the discretion afforded by statute to require that all summary judgment motions be made within 30 days after the filing of a note of issue (*cf. Fainberg v Dalton Kent Sec. Group*, 268 AD2d 247). Although a court enjoys latitude to set its own schedule, and to decide whether a proffered excuse constitutes good cause for delay, and on the basis of good cause may reach the merits and decide an untimely motion (*Goodman v Gudi*, 264 AD2d 758), it stands to reason that an excuse at least must be proffered. As the statute is written, if good cause is not established, then the court is not afforded discretion but, rather, must, as a matter of law, deny the motion. We have found a motion court's denial of a defendant's motion for summary judgment to be proper when it was untimely filed and when good cause for the delay was not established (*Borelli v Gegaj*, 248 AD2d 299; *Roberts v Conti Cleaners*, 261 AD2d 294). The present case cannot logically be distinguished from these situations. This is not a case where good cause existed and the time lapse was de minimis (*cf. Fainberg v Dalton Kent Sec. Group, supra*). Hence, the motion court was correct in denying the motion for the reason stated.

The majority suggests that good cause might be found in the timing of the note of issue and depositions, but that excuse was not offered by defendants on the motion or in reply to plaintiff's opposition to the motion, nor on appeal, so that it remains speculative. It also is inconsistent with the statement in defendants' brief that the note of issue was filed after completion of discovery. Moreover, the majority's allusion to the relatively unrestricted time periods for CPLR 3211 (a) (7) motions has no bearing on the specific basis of a CPLR 3212 (a) motion, particularly when the Legislature has recently acted affirmatively to eliminate just such a possibility. Hence, I respectfully conclude that the majority's decision basically ignores the clear legislative mandate and, moreover, deprives the motion court of the ability to set its own schedule and run its calendar accordingly.

Finally, defendants argue that it was error for the motion court to deny the motion as being untimely without reaching the merits. That argument is logically untenable. If the court is required to reach the merits before denying an untimely motion, then either the requirement of timeliness is meaningless, in which case why even have a statutory deadline, or considering the merits is a futile exercise if the motion is going to be denied as being untimely, in which case why should the court undertake the burden of considering the merits. The very point of the deadline is not to dispose of the case, but to dispose of the untimely motion.