Altamirano v 343 E. 8th St. Assoc. (2003 NY Slip Op 51718(U))

[*1]

Altamirano v 343 E. 8th St. Assoc.

2003 NY Slip Op 51718(U)

Decided on September 26, 2003

Supreme Court, New York County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on September 26, 2003

Supreme Court, New York County
 Bijoux Altamirano, Plaintiff,
against
343 East 8th Street Associates LLC Fotah Realty Corp.; Jesse A. Evans, Inc. and Jesse A. Evans, individually, and in his capacity as a principal of Jesse A. Evans, Inc., Defendants.
Index No. 110988

WALTER B. TOLUB, J.
In this negligence action Defendants 343 East 8th Street Associates LLC and Fotah Realty Corporation move for summary judgment pursuant to CPLR § 3212(a). Defendants claim they are entitled to summary judgment because: 1) they owed no duty of care to Plaintiff, (2) they did not have actual or constructive notice of an alleged dangerous condition, (3) as they had no authority to control Plaintiff's assailant, who was her invited guest, their acts or omissions were not the proximate cause of Plaintiff's injuries, (4) the acts of Plaintiff's invited guest severed the chain of causation required for a finding of negligence, (5) they complied with the New York Administrative Code Requirements regarding security, and (6) the provisions of section 50(a)(1) of the New York Multiple Dwelling Law do not apply to the building in question.
For the reasons stated herein, the court denies defendants' motion for summary judgment.
Facts In March, 2001 Plaintiff Bijoux Altamirano (hereinafter "plaintiff") rented Apartment B (hereinafter "Apartment B") at 343 East 8th Street (hereinafter "the building"), New York, NY. 343 East 8th Street Associates LLP (hereinafter "343 Associates"), of which Jane Holzer is the sole shareholder, owns the building. Fotah Realty Corporation (hereinafter "Fotah Realty"), of which Jane Holzer is the sole shareholder and officer, maintains the building. Fotah Realty employs Anthony Pagan, who is the manager and superintendent of the 343 East 8th Street property. Jesse Evans is the real estate broker who assisted plaintiff in renting her apartment; he is not party to this motion.
The building at 343 East 8th Street contains eight residential apartments and two commercial store fronts. Apartment B is a small studio apartment, approximately eighteen by thirteen feet, located on the ground floor; it has its own, private entrance that opens directly onto the street. This entrance is completely separate from the building's main entrance which provides access for all of the other apartments.
In November, 1999, Apartment B was converted from a storage to residential space. Anthony Pagan oversaw the renovation of the apartment, which included the installation of iron security gates over each of the apartment's windows and around its door in November, 1999.
It is this original iron security gate surrounding Apartment B's door that is at issue in this case. This original gate, which was in place at the time plaintiff rented Apartment B but which has [*2]since been replaced, had a round lock that was keyed on both sides. Although the door leading directly into the apartment was self-locking, the gate was not. The gate could not be opened from the outside, nor the inside, without using a key. The gate would not close unless it had been locked, either from the outside or the inside (Altamirano's Affidavit, p. 141).
Accordingly, in order to enter Apartment B, the tenant had to first unlock the exterior security gate, enter through it, and then re-lock it. The tenant then had to unlock the apartment's door before entering the apartment. In order to leave Apartment B, the tenant had to first exit through the door and lock it, then unlock the exterior security gate, exit through it, and re-lock it before proceeding onward.
This gate was purchased by Anthony Pagan and he was responsible for its installation (Pagan's Affidavit, p. 22-23). Neither he, nor anyone else, obtained any permits for the renovation work performed at Apartment B; no governmental agency inspected the apartment before it was rented (Id., p. 14).
In March 2001 defendant Jesse Evans, a real estate broker, showed plaintiff Apartment B (Altamirano's Affidavit, p. 13); plaintiff moved in shortly thereafter.
On or about March 23, 2001 plaintiff met Sean Washington (hereinafter "Washington"), an old friend, on the street in the East Village (Altamirano's Affidavit, p. 126). Plaintiff had known Washington for four years (Id., p. 108). She told Washington where she lived (Id., p. 125) and invited him to "stop by," which he did later that day (Id., p. 114). He stayed for approximately one hour and then left (Id., p. 127).
After being repeatedly called by Washington (Id., p. 135), plaintiff agreed he could visit again. On March 24, 2001, plaintiff let Washington into her apartment and closed and locked the exterior security gate from the inside (Id., p. 142). After half an hour (Id., p. 142), plaintiff and Washington left the apartment to go food shopping. They returned to the apartment and plaintiff ate what she had purchased (Id., p. 150). Thereafter, when plaintiff asked Washington to leave, he took her by the throat with a razor, told her to remove her pants, and assaulted and raped her (Defendants' Exhibit F). Washington then slit plaintiff's throat and left. Plaintiff is suing defendants for damages arising out of the medical and emotional injuries she sustained as a result of the attack.
Discussion Plaintiff contends that the defendant's negligent installation of the key-turn gate was a substantial factor in proximately causing her injuries because she was prevented from escaping her apartment during the rape and assault. Plaintiff claims that although she wanted to escape she did not try to because her attempt would have been futile given that the outside security gate was locked and the key required to open it was in her pants, out of her reach during the attack (Complaint, p. 5).
Plaintiff further contends that defendants' installation of a key-turn gate is compelling evidence of negligence because it violated New York Multiple Dwelling Law § 50-a(1) and New York Administrative Code § 27-371(j)(2)(b) (Plaintiff's Memorandum of Law, p. 8).New York Multiple Dwelling Law § 50-a(1) specifies (in pertinent part) that,
"[e]very entrance from the street, passageway, court, yard, cellar, or similar entrance to a class A multiple dwelling erected or converted after January first, nineteen hundred sixty-eight, except an entrance leading to the main entrance hall or lobby which main entrance hall or lobby is equipped with one or more automatic self-locking doors, shall be equipped with automatic self- closing and [*3]self-locking doors and such doors shall be locked at all times except when an attendant shall actually be on duty."
New York Administrative Code § 27-371(j)(2)(b) specifies that, "[d]oors to dwelling units shall be equipped with a heavy duty latch set and a heavy duty dead bolt operable by a key from the outside and a thumb-turn from the inside."
Plaintiff submitted expert testimony from a licensed architect stating that by their installation of the key-turn gate, defendants had violated both of these provisions (Korves' Affidavit, p. 1).
In opposition, defendants claim that their installation of the subject exterior gate was not negligent. Defendants contend that by installing the exterior security gate at issue, they were actually taking the minimal precautions required to protect their tenant from foreseeable harm (Defendants' Memorandum of Law, p. 7). They claim that the gate was not a "dangerous condition" and even if it were so considered, they had no notice of it because plaintiff never complained about it (Id., p. 8). Furthermore, even if the court deems that actual or constructive notice of the condition existed, the intervening, unforeseeable acts of Washington severed the chain of causation and preclude defendants' from liability. Defendants claim plaintiff did not show that they either knew or had reason to know "from past experience 'that there is a likelihood of conduct on the part of third-persons ... which is likely to endanger the safety of the visitor" (Defendants' Memorandum of Law, p. 4, quoting Nallan v. Helmsley-Spear, Inc., 429 N.Y.2d 606, 613). Defendants claim that since there was no criminal activity at the building in question, the assault upon plaintiff was unforeseeable (Defendants' Memorandum of Law, p. 5, citing M.D. v. Pasadena Realty Co., 753 N.Y.S.2d 457 (1st Dept. 2002)).
Most importantly for our purposes, however, defendants claim that they did not violate New York Administrative Code § 27-371(j)(2)(b) and that New York Multiple Dwelling Law § 50-a(1) does not apply to the building in question (Defendants' Memorandum of Law, p. 18). Defendants have submitted expert testimony that supports this claim and that directly contradicts plaintiff's expert witness (Miele's Affidavit, p. 1-2). Defendants then contend that there are no issues of triable fact and that as a matter of law, summary judgment must be awarded to them.
It is axiomatic that on a motion for summary judgment the court's role is to find issues, but not resolve them. To prevail a movant must present evidence sufficient to demonstrate the absence of any triable issues of fact thereby demonstrating entitlement to judgment as a matter of law (Sillman v. Twentieth Century-Fox Film Corp., 3 N.Y.2d 395 [1957]; see generally, Barr, Altman, Lipshie and Gerstman; New York Civil Practice Before Trial [James Publishing 2001-2002] §37:91-92). Once this showing has been made, the opposing party must produce admissible evidentiary proof establishing the existence of material issues of fact. Mere conclusions, expressions of hope or unsubstantiated allegations are insufficient for this purpose (Zuckerman v. City of New York, 49 N.Y.2d 557 [1980]).
A violation of the New York Administrative Code is some evidence of negligence, and a violation of the New York Multiple Dwelling Law, a statute, is negligence per se. Here, both parties have submitted conflicting expert testimony as to whether defendants violated one or both of these laws. This court cannot imagine a clearer example of a triable "issue of fact." Summary judgment is therefore inappropriate.
Before concluding, however, the court would address defendants' interpretation of a leading New York State premises security case. Defendants, in making their numerous arguments, relied [*4]upon Burgos v. Aqueduct Realty Corp. et. al. (92 N.Y.2d 544, 548 [1998]) (holding that a plaintiff who was attacked in her apartment building and who sued a landlord for negligent failure to take minimal precautions to protect tenants from harm can withstand summary judgment on proximate cause grounds by raising a triable issue of fact regarding whether landlord's conduct proximately caused plaintiff's injuries, even when the assailant is unknown to plaintiff). In Burgos, the New York Court of Appeals stated that, "landlords have a common-law duty to take minimal precautions to protect tenants from foreseeable harm, including a third party's foreseeable criminal conduct." It continued:
"[i]n premises security cases particularly, the necessary causal link between a landlord's culpable failure to provide adequate security and a tenant's injuries resulting from a criminal attack in the building can be established only if the assailant gained access to the premises through a negligently maintained entrance. Since even a fully secured entrance would not keep out another tenant, or someone allowed into the building by another tenant, plaintiff can recover only if the assailant was an intruder" (Id, at 550-551).
Defendants claim that consequently, as a matter of law, they cannot be held liable for plaintiff's injuries because her assailant was not an intruder. Defendants claim the intervening, unforeseeable acts of Washington sever the chain of causation required for a finding of negligence and that they should therefore not be held liable for plaintiff's injuries. 
By relying on Burgos, defendants cite a valid standard but apply it to the wrong scenario. In Burgos, the Court of Appeals held that a landlord has a (limited) duty to protect tenants from intruders. The Court of Appeals did not hold that a landlord might prevent a tenant from escaping an assailant, which is the issue here.
The court would point defendants to the relevant statement from Burgos, which is "in order to withstand summary judgment, a plaintiff need only raise a triable issue of fact regarding whether defendant's conduct proximately caused plaintiff's injuries" (Id., at 550).
This case is not dissimilar to Fontanez v. New York City Housing Authority, 224 A.D.2d 372 (1st Dept. 1996). There, the plaintiff entered her apartment building's lobby and noticed a young man loitering. When the man let two other men into the lobby, all three unknown to the plaintiff, she became suspicious and entered the stairwell instead of the elevator. She ran up the stairs to the third floor, where her friend had an apartment. The plaintiff was unable to enter the third floor landing, however, because the stairway door had no handle. When plaintiff turned to go up another floor, one of the men who had followed her hit her in the face with a revolver.
In Fontanez the First Department Appellate Division upheld the denial of the defendant Housing Authority's motion for summary judgment. The court deemed summary judgment inappropriate because the plaintiff raised issues of fact as to whether the missing door handle, which prevented plaintiff's escape, contributed to the criminal assault on plaintiff and whether the [*5]occurrence was reasonably foreseeable. As noted in the dissent, summary judgment was denied even though "no evidence [was] presented whatsoever to indicate how the first assailant gained access to the building" (Id., p. 374). The court was not concerned with how the assailant gained entry to the apartment building, the court was concerned with whether issues of fact existed as to whether the Housing Authority's inadequate maintenance was a substantial contribution to the plaintiff's injuries.
Here, as in Fontanez and Burgos, there are triable issues of fact as to whether defendants' negligence contributed to plaintiff's injuries. Summary judgment cannot be awarded. 
Accordingly, it is
ORDERED that pursuant to CPLR § 3212 defendants' motion for summary judgment is denied.
This memorandum opinion constitutes the decision and order of the Court.
Dated: September 26, 2003
 HON. WALTER B. TOLUB, J.S.C.
Decision Date: September 26, 2003