■ JONATHAN A., Respondent, v BOARD OF EDUCATION OF THE CITY OF NEW YORK, Appellant, et al., Defendants. [779 NYS2d 3]—

Order, Supreme Court, New York County (Joan Madden, J.), entered July 10, 2002, which denied the motion by defendant Board of Education of the City of New York for summary judgment dismissing the complaint as against it, unanimously reversed, on the law, without costs, and the motion granted. The Clerk is directed to enter judgment in favor of defendant Board of Education of the City of New York dismissing the complaint as against it.

In late 1995, defendant Police Athletic League (PAL) ran an after-school program on the premises of P.S. 57, a public school in Staten Island operated by defendant Board of Education (the Board). In its application for the permit to run the program at the school, PAL, a corporation neither owned nor controlled by the Board, agreed that it would, inter alia, "provide adequate supervision of the activity at all times." Defendant Willie McCain was one of the PAL employees involved in running the program.

The infant plaintiff alleges that, while he was participating in the PAL after-school program at P.S. 57 on December 15, 1995, he was sexually abused by defendant McCain. Plaintiff commenced this consolidated action against the Board, PAL and McCain, seeking to recover damages for the injuries resulting from McCain's abuse. After plaintiff filed a note of issue and settled his claim against PAL, the Board moved for summary judgment.

In support of its summary judgment motion, the Board argued that, as a matter of law, it could not be held liable to plaintiff, since uncontradicted evidence showed that McCain had not been an employee of the Board at the time of the abuse, and that the Board had neither supervised, monitored nor participated in running PAL's after-school program. The Board's only role with regard to the program was to issue PAL—an estab-

lished, bona fide and insured community-based organization—a permit to operate the program on school property after school hours. In opposition, plaintiff pointed out that, in 1994 or 1995, PAL had consulted the Board when it was considering hiring McCain, a former teacher who had lost his teaching license due to prior allegations of sexual misconduct. At that time, the Board, through the principal of P.S. 57, accurately advised PAL that the criminal charges against McCain based on such allegations had been dismissed. It is uncontroverted, however, that, in the same conversation, the principal told PAL that, if it were his decision, he "wouldn't hire" McCain. Thus, the record does not support plaintiff's assertions that the Board gave PAL its "approval" for hiring McCain.

We reverse the IAS court's denial of the Board's motion for summary judgment, and grant the motion. Plaintiff does not dispute that, at the time of the abuse, McCain was not an employee of the Board, but an employee of PAL, an independent organization that selected its own employees and ran its own programs. The fact that the Board lawfully permitted PAL to run an after-school program at P.S. 57 does not provide a basis for holding the Board liable for any negligence of PAL in hiring McCain (against the advice of the Board's principal) or in supervising McCain's conduct while he was working on a PAL program. "A defendant generally has no duty to control the conduct of third persons so as to prevent them from harming others, even where as a practical matter defendant can exercise such control" (*Hamilton v Beretta U.S.A. Corp.*, 96 NY2d 222, 233 [2001], quoting *D'Amico v Christie*, 71 NY2d 76, 88 [1987]; *see also Purdy v Public Adm'r*, 72 NY2d 1, 8 [1988]; *People v Sturm, Ruger & Co.*, 309 AD2d 91, 95 [2003], *lv denied* 100 NY2d 514 [2003]). In this case, no special relationship existed— either between the Board and plaintiff,* or between the Board and codefendants PAL and McCain—that would have placed the Board, as opposed to PAL, "in the best position to protect against the risk of harm" (*Hamilton*, 96 NY2d at 233). Further, that the Board may have made hiring suggestions to PAL from time to time, which suggestions PAL was not obligated to follow (and, in hiring McCain, did not follow), did not make the Board liable for the unfortunate consequences of hiring McCain (*see Cohen v Wales*, 133 AD2d 94 [1987], *lv denied* 70 NY2d 612 [1987] [plaintiff abused by teacher had no negligence claim

---

* Although plaintiff was a student at P.S. 57, we reiterate that, at the time the abuse occurred, he was in the custody not of the Board, but of PAL, an independent organization lawfully permitted by the Board to operate on school grounds.

against district that recommended teacher to district where abuse occurred]). Contrary to plaintiff's contentions, nothing in the statutes he cites (Education Law §§ 414, 2554, 2801) gives him a cause of action against the Board based on the facts of this case. Accordingly, the Board was entitled to summary judgment (see *Oliva v City of New York*, 297 AD2d 789 [2002] [city was entitled to summary judgment dismissing claim against it based on assault by PAL employee, where city established that wrongdoer was not its employee]).

To the extent the Board's knowledge of the prior accusations against McCain (which knowledge PAL shared) may have rendered McCain's misconduct during the PAL program a foreseeable risk, "[f]oreseeability, alone, does not define duty—it merely determines the scope of the duty once it is determined to exist" (*Hamilton*, 96 NY2d at 232, citing *Pulka v Edelman*, 40 NY2d 781, 785 [1976], *rearg denied* 41 NY2d 901 [1977]). Here, assuming that McCain's misconduct was a foreseeable risk, the party best situated to protect plaintiff against that risk, by virtue of both its relationship with plaintiff and its relationship with McCain, was PAL. Plaintiff was entrusted to PAL's custody, not the Board's, at the relevant time. Further, it was PAL that independently made the informed decision to hire McCain, and that possessed full authority to exercise direct control over McCain's conduct while he was on the job. Thus, it was PAL's duty, not the Board's, to protect plaintiff from the risk of any tortious acts of McCain or other PAL employees during the PAL program, and plaintiff's remedy for the harm inflicted by McCain during the program is against PAL (and McCain himself), not the Board. Plaintiff himself has recognized PAL's duty to him by suing PAL in this action; that claim, again, has been settled.

We also reject plaintiff's theory, apparently adopted by the IAS court, that liability may be imposed on the Board based on its status as owner of the school property where the abuse occurred. Of course, the Board, like any landowner, has an obligation to use reasonable care to maintain its property in a physically safe condition (see *Kush v City of Buffalo*, 59 NY2d 26, 29 [1983]). In our view, however, McCain, an individual who was brought onto the school property by the Board's lawful licensee, did not constitute a "dangerous condition or instrumentality on the property" (*id.* at 30) of the kind for which the Board may be held liable based on its status as a landowner (*cf. id.* [school district held liable for failing to secure hazardous chemicals in laboratory storeroom]).

We observe that, in giving effect to settled law limiting a

party's liability based on the acts of another, we preserve a school district's ability to make school property available for after-school enrichment programs conducted by non-school community-based organizations, such as PAL, that are not under the school district's control. If the licensing of school property to a community-based organization exposed a district to liability for any negligence of the licensee group in hiring its staff or conducting its program, the effect would be to discourage districts from making their property available even to the most experienced and reputable of such organizations, to the general detriment of the youth of the community. Since a person injured by the negligence of a community-based organization is always entitled to pursue a claim directly against that organization (as plaintiff successfully has done here), there is no sound policy reason for the expansion of liability plaintiff seeks in this action (*see Cohen v Wales*, 133 AD2d at 95).

Finally, although the Board moved for summary judgment more than 120 days after the filing of the note of issue (*see* CPLR 3212 [a]), we, like the IAS court, exercise our discretion to consider the motion on the merits, in the interest of judicial economy and in view of the absence of prejudice to plaintiff (*see e.g. Gonzalez v 98 Mag Leasing Corp.*, 95 NY2d 124 [2000]; *M.D. v Pasadena Realty Co.*, 300 AD2d 235 [2002]). Concur—Sullivan, J.P., Lerner, Friedman and Marlow, JJ.

